**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSEPH E. McGOWEN,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:06-CV-388-Y** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.     STATEMENT OF THE CASE

Plaintiff Joseph E. McGowen brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. McGowen applied for disability insurance and SSI benefits on June 10, 2003, alleging a disability onset date of November 5, 2002. (Tr. 67, 316). His insured status for purposes of benefits under Title II of the Social Security Act expired December 31, 2004. (Tr. 70, 78).

After the Social Security Administration denied his applications for benefits both initially and on reconsideration, McGowen requested a hearing before an administrative law judge (the "ALJ"), and ALJ James A. Wendland held a hearing on July 13, 2005, in Fort Worth, Texas.  (Tr. 336).  McGowen was represented by counsel.  On August 23, 2005, the ALJ issued a decision that McGowen was not disabled and was not entitled to disability insurance or SSI benefits because he was capable of performing a modified range of light work.[1]  (Tr. 17-24).   The Appeals Council denied McGowen's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 6).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.   Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 2

the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is

more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.     ISSUES

     1.     Whether the hypothetical presented to the vocational expert during the administrative hearing accurately reflected McGowen's residual functional capacity (RFC); and

     2.     Whether the ALJ gave appropriate weight to the opinion of the testifying medical expert.

D.     ADMINISTRATIVE RECORD

     1.     Medical History

McGowen stopped working in November 2002 because of pain in his hips and legs. He consulted Carlos Macias, M.D., on November 21, 2002. (Tr. 163). Macias noted weak femoral pulses in McGowen's lower extremities. (Tr. 164). Diagnostic tests confirmed an abdominal aneurysm, stenosis of the left internal iliac artery and left superficial femoral artery, and occlusion of the left tibial artery. (Tr. 129, 141, 165). Macias diagnosed peripheral vascular disease with severe claudication[2] of the hips and thighs. (Tr. 162, 172). McGowen underwent surgery in January 2003 to repair the aneurysm. (Tr. 145, 152-54).

---

[2] Claudication refers to limping or lameness. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 361 (29th ed. 2000).

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 4**

McGowen continued to complain of pain after the surgery, (Tr. 180-81), and additional tests were ordered to investigate possible causes. Lumbar magnetic resonance imaging (an MRI) performed in March 2003 showed mild degenerative disc disease at L4-L5 and L5-S1, with a protruding disc at L4-L5, and a degenerative spur displacing the nerve root at L4. (Tr. 183). Neurosurgeon Lee Kesterson, M.D., examined McGowen and reviewed the MRI results. Kesterson opined that McGowen had sciatica and lumbar radiculopathy.[3] (Tr. 214-20). Electromyography (EMG) studies were performed on April 5, 2003, and confirmed bilateral L5 radiculopathy. (Tr. 201-05).

McGowen was referred to David Findlay, M.D., in August 2003 for pain management services. Findlay reviewed the results of McGowen's previous diagnostic tests, and diagnosed lumbar spondylosis[4] at L3-S1, facet arthropathy[5] at L3-S1, degenerative disc disease with dessication and loss of disc height at L4-L5 and L5-S1, and disc herniation at L4-L5. (Tr. 286). Findlay administered a series of steroid injections for pain relief. (Tr. 244-48, 302, 306-10). Findlay also prescribed pain medication for daily use. McGowen was discouraged because treatment was not helping his pain. (Tr. 272).

McGowen underwent a consultative evaluation with internist S. R. Boya, M.D., on January 26, 2004. (Tr. 251). McGowen complained of pain in his hips and lumbosacral area. He exhibited

---

[3] Radiculopathy is a disease of the nerve roots. *Id.* at 1511.

[4] Spondylosis is a general term for ankylosis of a vertebral joint or degenerative spinal changes due to osteoarthritis. *Id.* at 1684. Ankylosis refers to the immobility and consolidation of a joint due to disease, injury or surgical procedure. *Id.* at 91.

[5] Arthropathy refers to any joint disease. *Id.* at 152.

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 5**

mild tenderness in the lumbosacral area, but demonstrated normal range of motion with no edema and good pedal pulses.  Boya observed no motor, sensory, or reflex abnormalities, (Tr. 253), but noted that McGowen occasionally used a cane or walker for ambulation.

On September 16, 2004, Findlay completed a set of interrogatories about McGowen's ability to perform work-related activities.  (Tr. 264).  Findlay found that McGowen could sit for three or four hours during an eight-hour workday; stand or walk for two to three hours during the workday; sit for sixty minutes at a time; stand for fifteen to thirty minutes at a time; and walk for five or ten minutes.  (Tr. 264).  Findlay also opined that McGowen would require frequent rest periods and could be expected to miss work frequently due to exacerbations in his pain level.  (Tr. 264).  McGowen's condition was expected to last indefinitely.  (Tr. 265).

2.      Administrative Hearing

McGowen was born October 11, 1950.  (Tr. 67, 316).   He testified that he had completed the ninth grade, and could read, write, and perform basic arithmetic.  (Tr. 347).  His work experience consisted of maintenance-type jobs, including carpentry and painting.  (Tr. 80, 98, 347-48).

McGowen testified that he stopped working in November 2002 because of pain in his hips and knees that was not alleviated with medication.  (Tr. 340).  Surgery to repair the aneurysm also failed to relieve the pain.  (Tr. 342).  McGowen is diabetic, but his condition is controlled with diet and medication.  He also testified that he suffers from back pain, although his doctors were unable to determine the cause.  (Tr. 344-45).  McGowen testified that he sometimes feels depressed and anxious, but his doctors had prescribed Effexor, which improved his symptoms.  (Tr. 346-47).

McGowen typically awoke at 5:30 or 6:00 a.m.  He would drink coffee and sit in his recliner,

then visit his mother who lived two blocks away.  (Tr. 348-49).  McGowen testified that he would rest in the afternoon and take ibuprofen to relieve the pain in his legs and knees.  Sometime he would  visit his mother again in the afternoon.  He dined out for most of his meals.  (Tr. 350).

Medical expert Stephen Eppstein also testified.  He identified McGowen's principle problem as claudication, which he defined as hip pain that was aggravated by walking.  (Tr. 351).  Diagnostic tests also showed a protruding lumbar disc, although the treating physicians were uncertain whether this contributed to McGowen's symptoms.  (Tr. 352).   Eppstein testified that McGowen did not meet or equal the criteria of any listed impairment, but also opined that McGowen's impairments would affect his ability to function in a work setting.  Eppstein limited McGowen to lifting ten pounds; standing and walking for two hours in an eight-hour day; sitting, with a sit/stand option, for six hours per eight-hour day; no temperature extremes; and additional limitations in his ability to bend, stoop, crawl, or climb stairs, ladders, and scaffolds.  (Tr. 353-54).

Vocational expert Barbara Dunlap testified that McGowen's past relevant maintenance work required medium to heavy exertion and was considered semi-skilled to skilled work activity.  (Tr. 356). She testified that McGowen would have acquired work skills transferable to light work, but not to sedentary work.  (Tr. 357).   The ALJ asked Dunlap to consider the following:

> [A] hypothetical person 54 years of age with nine years of formal education and same past work experience as the Claimant and ability to perform light work with the following specific restrictions and requirements.  Not required to stoop, balance, crouch or climb stairs and ramps more than occasionally.  Not required to crawl or kneel or to climb scaffolds, ladders and ropes.  Not required to sit for more than 30 minutes at one time without the opportunity to stand in addition to the lunch and normal legal breaks during the workday.  Not required to stand more than one-half hour at one time without the opportunity to sit.  Not required to stand or walk for more than two hours out of an eight-hour workday.  Not required to push or pull with

the feet more than occasionally.  Not required to work at unguarded heights or near
unguarded hazardous mechanical equipment.  Not required to be exposed to extreme
temperatures and high humidity.

(Tr. 357-58).  Dunlap asked for clarification of the hypothetical because it appeared to require work

equivalent to a sedentary level; however, the ALJ interjected that the worker could "lift up to 20

pounds frequently and 10 - - restricted light."[6]   (Tr. 358-59).   Dunlap then testified that this

hypothetical would allow for unskilled work as a hand laborer, with approximately 40,000 jobs

available nationally.  (Tr. 359).

     3.     ALJ Decision

The ALJ found that McGowen had not engaged in substantial gainful activity since his

alleged onset date.  (Tr. 18).  The ALJ also found that McGowen suffered from the following

medically determinable impairments: degenerative lumbar disc disease, hypertension, and status post

repair of an abdominal aortic aneurysm.  Although these impairments were severe, the ALJ found

they were not severe enough to meet or medically equal the criteria of any listed impairment.  (Tr.

19).  *See generally* 20 C.F.R. Part 404, Subpart P, app. 1 (Listing of Impairments).

Proceeding to the next step in the process, the ALJ found that McGowen retained the

capacity for light work with the following modifications: stooping, balancing, crouching, or

climbing stairs or ramps no more than occasionally; no crawling, kneeling, or climbing of ladders,

scaffolds, or ropes; sitting not to exceed thirty minutes without the opportunity to stand; standing

not to exceed thirty minutes without the opportunity to sit; standing and walking limited to two

hours out of an eight-hour workday; no unguarded heights or hazardous mechanical equipment; and

---

[6]  The quoted statement is the basis for McGowen's first claim of error.

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 8**

no exposure to temperature extremes or high humidity.  (Tr. 19).  Based on the vocational expert's

testimony, the ALJ found that McGowen was unable to perform any of his previous occupations,

but there was other work available in the national economy that McGowen could perform. (Tr. 22-

23).  Accordingly, the ALJ found that McGowen was not disabled within the meaning of the Social

Security Act and was not entitled to disability insurance or SSI benefits.  (Tr. 24).

D.      DISCUSSION

        1.      Defective Hypothetical

        McGowen contends that the Commissioner's decision is not supported by substantial

evidence because the hypothetical question presented to the vocational expert did not accurately

reflect McGowen's lifting abilities as found by the ALJ.  The hypothetical presented to the

vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual

functional capacity assessment, and the claimant or his representative must be afforded the

opportunity to correct any deficiencies in the ALJ's question.[7]  *Bowling v. Shalala*, 36 F.3d 431, 436

(5th Cir. 1994).  A claimant's failure to point out problems in a defective hypothetical does not

salvage that hypothetical as a proper basis for a disability determination.  *Boyd v. Apfel*, 239 F.3d

698, 707 (5th Cir. 2001).

        During the administrative hearing, the vocational expert indicated that she was somewhat

confused by the ALJ's hypothetical and was interpreting it as limiting the worker to sedentary

exertion; however, the ALJ responded that the hypothetical worker could "lift up to 20 pounds

frequently and 10 - - restricted light."  McGowen complains that the ALJ's statement contradicts the

---

        [7]  McGowen's counsel was given the opportunity to cross-examine the vocational expert.

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 9**

ALJ's written decision, in which the ALJ found that McGowen was capable of a modified range of work at the light level of exertion, which the ALJ recognized "typically requires lifting no more than 20 pounds at a time with the frequent lifting of up to 10 pounds." (Tr. 19). The ALJ apparently misspoke at the hearing, but a review of the administrative hearing testimony demonstrates that the vocational expert understood that McGowen was capable of the lifting requirements of light work as generally defined, but was limited to sedentary work from a postural standpoint. (Tr. 359-60). In response to questions from McGowen's counsel, the vocational expert testified that the hand-laborer jobs she had identified were classified as light work according to the Dictionary of Occupational Titles[8] because the work could exceed sedentary lifting levels, but the work would not require standing or walking for any significant period of time. (Tr. 360). The ALJ's misstatement during the hearing caused no prejudice to McGowen.

2.      Medical Expert Testimony

McGowen asserts that the ALJ erred in rejecting the medical expert's opinion that McGowen was limited to lifting no more than ten pounds because the ALJ did not apply the appropriate legal standards and also relied on erroneous grounds for rejecting the medical expert's opinion.[9] The ALJ acknowledged that Eppstein had opined that McGowen would have a lifting limitation of ten pounds, but the ALJ also noted that there was a written medical source statement from treating

---

[8] The Dictionary of Occupational Titles defines light work as the exertion of up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently. DICTIONARY OF OCCUPATIONAL TITLES app. C (rev. 4th ed. 1991)(section IV, rating strength demands).

[9] If McGowen is limited to sedentary work, the Medical-Vocational Guidelines direct a finding of disabled given his age, limited education, and lack of transferable work skills. *See* 20 C.F.R. Part 404, Subpart P, app. 2, §§ 201.09-.10.

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 10**

physician Gupta that assumed that McGowen could lift twenty pounds. (Tr. 21). The ALJ accepted Gupta's opinion because of  the absence of any upper extremity limitations and in view of the consensus that McGowen's hip symptoms were "questionably not orthopedic in nature." (Tr. 21).

Evidence from non-examining medical sources are considered to be opinion evidence to be weighed in accordance with the regulations. 20 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ may ask for and consider opinions from medical experts on the nature and severity of a claimant's impairments, including whether an impairment equals a listed impairment. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii). Relevant factors in weighing medical opinions include: the length of the examining relationship, the treating relationship, the supportability of the opinion, the consistency of the opinion with the record as a while, the medical source's specialization, and any other relevant factors. *Id*. §§ 404.1527(d)(1)-(6); 416.927(d)(1)-(6).

McGowen asserts that the ALJ erred in relying on Gupta's opinion because no treating physician, including Gupta, opined that McGowen could lift up to twenty pounds. The disability form the ALJ cited, albeit titled "Attending Physician's Statement," was signed by physician's assistant Richard Keller, not Gupta. (Tr. 210). Licensed physicians such as Eppstein are acceptable medical sources, and evidence from these sources are used to establish whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Physician's assistants are not considered acceptable medical sources, although evidence from physicians' assistants may be used to show the severity of impairments and how it effects a person's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). McGowen contends that, had the appropriate standards been followed, Eppstein's opinion as an acceptable medical source would have been assigned greater weight than

the opinion of a physician's assistant.

The Commissioner asserts that the ALJ properly discounted the medical expert's opinion because the attending physician statement was completed by the physician's assistant on behalf of Gupta. There is no indication that the statement Keller completed was tacitly or expressly approved by Gupta. The Commissioner also asserts that the ALJ's assessment of McGowen's lifting capacity is otherwise supported by substantial evidence and not contradicted by the evidence of record. The ALJ's decision, however, must stand or fall on the reasons set forth in the ALJ's decision as adopted by the Appeals Council. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ's decision misrepresents or reflects a misunderstanding of the evidence, which precludes the court from affirming the decision based on post hoc reasoning about what the ALJ might have done absent that misunderstanding. The decision should be reversed and remanded to give the Commissioner the opportunity to revisit this issue.

RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings that are consistent with these proposed findings of fact and conclusions of law.

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 12**

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED</u>
<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION</u>
<u>AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 3, 2007.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 3, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July  13 , 2007.

 /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 14**